IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| MULLER MARTINI CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 CV 4378 (JNE/JJG) |
| | ) | |
| GOSS INTERNATIONAL AMERICAS, | ) | |
| INC. and GOSS INTERNATIONAL | ) | |
| CORPORATION, | ) | |
| | ) | PLAINTIFF'S MEMORANDUM IN |
| Defendants/Third-Party Plaintiffs, | ) | SUPPORT OF ITS MOTION TO |
| | ) | COMPEL DISCOVERY |
| v. | ) | |
| | ) | |
| MÜLLER MARTINI HOLDING AG, | ) | |
| GRAPHA HOLDING AG, MÜLLER | ) | |
| MARTINI DRUCKVERARBEITUNGS | ) | |
| SYSTEME AG, and MÜLLER | ) | |
| MARTINI MARKETING AG, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

KEITH V. ROCKEY
KATHLEEN A. LYONS
  Rockey, Depke & Lyons, LLC
  Sears Tower, Suite 5450
  233 South Wacker Drive
  Chicago, Illinois 60606
  Phone:  (312) 277-2006

MICHAEL R. CUNNINGHAM
  Gray, Plant, Mooty, Mooty & Bennett, P.A.
  500 IDS Center
  80 South Eighth Street
  Minneapolis, MN 55402
  Phone:  (612) 632-3000

Attorneys for Muller Martini Corp.

## TABLE OF CONTENTS

I.    The Background Facts ...................................................................1

     A.    The Parties And The Cause Of Action.................................1

     B.    The "Aggressive" Schedule Initially Demanded By Goss.................3

     C.    Muller Martini's Interrogatories To Goss
          And Its Refusal To Answer...............................................5

II.    Why Muller Martini's Motion Should Be Granted........................7

     A.    Beyond Any Question Is The Relevancy
          Of The Disputed Interrogatories ......................................15

     B.    Unfounded Is Goss' Objection That The Discovery Sought
          Is Inconsistent With This Court's Scheduling Order........................16

CONCLUSION..................................................................................19

# TABLE OF AUTHORITIES

<u>Aero Products International, Inc., et al.</u> v. <u>Intex Recreation Corp., et al.</u>
  (Fed. Cir., 2006), 466 F.3d 1000 ........................................................................17

<u>Hickman</u> v. <u>Taylor</u>
  (1947), 329 U.S. 495 .........................................................................................8

<u>Mead Corporation</u> v. <u>Riverwood Natural Resources Corporation</u>
  (D. Minn., 1992), 145 F.R.D. 512 ....................................................................8

<u>Scripps Clinic & Research Foundation</u> v. <u>Genentech, Inc.</u>
  (Fed. Cir., 1991), 927 F.2d 1565 ....................................................................17

<u>Wilson Sporting Goods Co.</u> v. <u>Hillerich & Bradsby Co.</u>
  (Fed. Cir., 2006), 442 F.3d 1322 ...............................................................17-18

In demonstrating that the motion of Muller Martini Corp. ("Muller Martini") to compel is well founded, we will first outline the facts relevant to this motion, demonstrating that defendants Goss International Americas, Inc. and Goss International Corporation (hereinafter collectively referred to "Goss") insisted on what it called an "aggressive" schedule. Once it obtained that schedule and Muller Martini, pursuant to this Court's local rules, served interrogatories and requested documents after the scheduling conference was held, Goss has repeatedly argued that discovery is moving too quickly, and has refused to provide any discovery. Then comes our showing that the discovery is indeed relevant and timely.

I.     The Background Facts

    A.     The Parties And The Cause Of Action

Muller Martini brought this action in October of 2007, alleging infringement of U.S. Patent No. 5,772,195 ("the '195 patent") entitled "Gathering And Wire Stitching Machine With Multiple Wire Stitching Stations". Such machines are frequently called "saddle stitchers" and are used in the printing and publishing business, frequently used to bind magazines and like publications.

Named as the defendants are Goss International Americas, Inc. and Goss International Corporation. The first defendant has its principal place of business in New Hampshire, while the second is based in a Chicago suburb. Goss recently introduced to

the marketplace, selling and installing in this District, a saddle stitcher known as the SP 2500 embodying the invention of the '195 patent.

In its answer to the complaint, Goss has denied infringement and has affirmatively pleaded that the '195 patent is invalid.  In addition, Goss' answer alleges, in Count I, a claim for declaratory judgment that Goss has not infringed the '195 patent. Count II is another declaratory judgment claim, alleging that the '195 patent is invalid over the prior art.

Apart from those declaratory judgment counterclaims, Goss has also alleged that Muller Martini, and a number of its Swiss-based affiliates, have infringed U.S. Patent No. 5,499,803 ("the '803 patent"), directed to a "Collator Without A Main Line Drive Shaft".  The counterclaim identifies the allegedly infringing machine as the SUPRA saddle stitcher manufactured in Switzerland.  It has been sold by Muller Martini in the United States.[*]

---

[*]  This is not the only litigation pending between the parties.  Pending in Chicago is the first action between the parties in which Goss sued Muller Martini and other members of what it calls the Muller Martini family of companies.  In addition, there is pending in Wilmington, Delaware, another action brought by Muller Martini and others against Goss for infringement of a second patent.  In that action, Goss has counterclaimed for infringement of the same '803 patent, alleging infringement by other Muller Martini equipment.

2

B.     The "Aggressive" Schedule Initially Demanded By Goss

After this Court set a scheduling conference, Muller Martini, as the plaintiff,

sent a draft scheduling order to Goss on January 28, 2008, suggesting a schedule for

discovery that took into account some of the discovery delays that were encountered in

the Chicago case (Declaration Of Keith V. Rockey In Support Of Plaintiff's Motion To

Compel Discovery ("Rockey Declaration"), Exhibit A).  Counsel for Goss telephoned

counsel for Muller Martini to indicate that he could "live with" the dates proposed.  Goss

formally responded on the next day, indicating that it would provide comments

respecting the order (Rockey Declaration, Exhibit B).

On the evening of February 8, Goss responded (Rockey Declaration, Exhibit

C).  Instead of adhering to the dates proposed as counsel had already advised that he

would, Goss accelerated the schedule almost across the board stating (Rockey

Declaration, Exhibit C, p. 1):

> "The good news is that our client is willing to live with a
> fairly fast schedule, which your client as plaintiff should
> appreciate.  We should be able to meet it, as much of the
> work is already done."

Counsel for Muller Martini pointed out that the response was not only late, but changed

substantially the draft of the order (Rockey Declaration, Exhibit D).  Counsel for Goss

3

did admit that he was proposing "a more rapid schedule" and that his client sought such

an "aggressive" schedule (Rockey Declaration, Exhibit E).

In all events, Muller Martini again revised the draft Rule 26(f) Report which

included both the dates proposed by Muller Martini and those proposed by Goss (Rockey

Declaration, Exhibit F).  The scheduling conference was held on February 19, 2008, and

this Court, at the urging of Goss, adopted Goss' more "aggressive" schedule.

During that conference, Muller Martini raised the question of whether the

schedule, as proposed by Goss, allowed sufficient time to complete discovery, given

some of the discovery delays that had arisen in the Chicago litigation.  Indeed, Muller

Martini raised the issue of the Goss documents, and specifically the Goss documents that

relate to the SP 2500 Saddle Stitcher -- the accused product before this Court.  Goss

responded that it would be no problem for Goss to produce those documents forthwith,

notwithstanding the position Goss told the Court in Chicago -- that Goss should not be

directed to produce the SP 2500 documents in that case because the volume of materials

was too burdensome.  Thereafter, Muller Martini asked Goss to produce the documents

relating to the SP 2500, and that is when the stonewalling began.  Thus:

(1)     On March 9, 2008, counsel for Muller Martini wrote to
        counsel for Goss reminding Goss of Muller Martini's

request for documents relating to the SP-2500 (Rockey
Declaration, Exhibit G);

(2)     On March 17, 2008, counsel for Muller Martini again
        wrote to Goss asking for the documents (Rockey
        Declaration, Exhibit H); and

(3)     Goss responded, asking for clarification of what
        documents relating to the SP 2500 Muller Martini was
        after and that Goss would "see what I can do" (Rockey
        Declaration, Exhibit I).

Muller Martini on the same day provided a specific indication of the documents

requested once again pointing out the representations that Goss had made to this Court at

the scheduling conference (Rockey Declaration, Exhibit J).


C.      Muller Martini's Interrogatories To
        Goss And Its Refusal To Answer

        On February 19, 2008, after the scheduling conference, Muller Martini

served its first set of interrogatories to defendants and the responses Muller Martini

received a month later (Rockey Declaration, Exhibit K).  It is apparent that Goss made no

real effort to respond to that discovery.  Thus:

(1)     Interrogatory No. 1 inquired as to the identity of saddle
        stitchers made and sold by Goss which have at least two
        stitching stations spaced apart from each other, a
        characteristic of the Muller Martini '195 patent.  Goss'
        response was that the SP 2500 machine meets the
        criterion of two stitching heads "spaced apart from each

other" but did indicate whether any other Goss saddle
stitchers do (Rockey Declaration, Exhibit K, p. 2);

(2)    Interrogatory No. 4 inquired as to Goss' defense of
noninfringement, and Goss refused to answer that at all
(Rockey Declaration, Exhibit K, p. 4);

(3)    Interrogatory No. 5 inquired into the position, as pleaded
by Goss that the patent was invalid, Goss likewise
refused to answer that interrogatory (Rockey Declaration,
Exhibit K, pp. 4-5).

(4)    Similarly, in Interrogatory No. 6, Muller Martini asked
for the basis for Goss' affirmative defenses; it refused to
answer that question as well (Rockey Declaration,
Exhibit K, p. 5);

(5)    Interrogatory No. 9 inquired into Goss' claim for
infringement based on the '803 patent.  Goss dodged that
question as well, refusing to identify which claims it
contends are infringed (Rockey Declaration, Exhibit K,
p. 7);

(6)    Goss also refused to answer Interrogatory Nos. 14 and
16, inquiring into prior art known to Goss as to the '803
patent (Rockey Declaration, Exhibit K, pp. 10-12).

Muller Martini promptly raised with Goss its failure to make discovery in a letter of April

2, 2008 (Rockey Declaration, Exhibit L)[*].

---

[*]   Muller Martini Exhibit L contains a typographical error in subparagraph 5; the correct
interrogatories seeking information on Goss' claim for infringement are Interrogatory
Nos. 9 and 10.

Goss then wrote to counsel for Muller Martini, suggesting that it was still investigating its claims and that Muller Martini's interrogatories were served "too early". Goss also suggested that somehow Muller Martini's discovery was inconsistent with the Court's Scheduling Order (Rockey Declaration, Exhibit M). Thus the posturing continued, as Goss reiterated its refusal to answer interrogatories. Muller Martini then advised Goss that it would proceed before the Court in Minnesota and inquired as to whether Goss would agree to the informal discovery resolution procedure as provided for in the scheduling order (Exhibit N). Goss never responded to that inquiry.

On April 14, 2008, Goss assured Muller Martini it would have "answers to your questions relatively soon". Muller Martini asked for a date certain for the production of the SP 2500 documents and supplemental interrogatories, but Goss refused (Rockey Declaration, Exhibit O). Thus, Muller Martini certainly attempted to resolve this discovery dispute without the intervention of the Court, but, as this record shows, was unable to do so.

II.   <u>Why Muller Martini's Motion Should Be Granted</u>

Elementary is the principle that Rule 37 of the Federal Rules of Civil Procedure gives this Court discretion to order a party to respond to discovery requests. And of course it is well-settled that the discovery rules are liberally interpreted to ensure

open, efficient and fair dealings in the federal courts (<u>Hickman</u> v. <u>Taylor</u> (1947), 329

U.S. 495, 501).  As this Court observed in <u>Mead Corporation</u> v. <u>Riverwood Natural</u>

<u>Resources Corporation</u> (D. Minn., 1992), 145 F.R.D. 512, 516, Rule 26 permits discovery

of all non-privileged matter relevant to the action, whether it pertains to a claim or a

defense.  All of the discovery propounded here by Muller Martini clearly does.

And it is no answer to make the bald assertion that the discovery is "overly

broad and burdensome" without more.  The party opposing discovery shoulders the

burden of demonstrating that a request is too broad and burdensome, something Goss

does not even attempt to do here (<u>Mead</u> 145 F.R.D. at 515).

As this Court will observe, the interrogatories which Muller Martini seeks

responses to are Interrogatory Nos. 1, 4, 5, 6, 9, 14 and 16.  Under Local Rule 37.2, the

interrogatories, and responses thereto, which are in issue are set forth below:

"INTERROGATORY NO. 1

Identify all saddle stitchers for producing products such as
magazines and booklets from folded printed sheets that you
manufacture, sell, offer for sale, or import that have a conveyer
path that includes a gathering segment and adjoining wire
stitching segment and a saddle-shaped support for receiving
printed sheets with the wire stitching segment including at least
two wire stitching stations spaced apart from each other and
driven in cycle with each other, including for each whether you
manufacture, sell, offer for sale, or import such machines, and
identify all persons known to defendants having knowledge
thereof and all documents relating thereto.

8

[RESPONSE]

Goss objects to this interrogatory as follows: it is vaguely
worded, and it is unduly burdensome, particularly with respect
to identification of 'all persons known to defendants having
knowledge thereof' and 'all documents relating thereto.' It is
also vaguely worded in that it uses some but not all language
from the patent. Goss objects to having to identify machines
based on piecemeal quotations of language from the patent.
Goss further objects that this interrogatory was served far in
advance of the agree-upon and ordered date for Rule 26 initial
disclosures, and thus is both an attempt to bypass the Court's
schedule and an attempt to impose unnecessary litigation costs
on Goss.

Subject to and without waiving its objections, Goss states that
the SP2500 is a saddle stitcher with two stitching heads spaced
apart from each other.

Goss has not completed its investigation and will supplement
once it has.

INTERROGATORY NO. 4

Describe in detail your defense of non-infringement, including
but not limited to, stating each element or limitation of each
claim that you contend is absent from the SP 2500 and/or any
other devices identified in response to Interrogatory No. 1, and
identify all persons known to defendants having knowledge
thereof and all documents relating thereto.

[RESPONSE]

Goss objects to this interrogatory as follows: it is vaguely
worded, and it is unduly burdensome, particularly with respect
to 'all persons' and 'all documents' language and the application

9

of that language to this type of contention interrogatory. Goss further objects that this interrogatory was served far in advance of the agreed-upon and ordered date for Rule 26 initial disclosures, and thus is both an attempt to bypass the Court's schedule and an attempt to impose unnecessary litigation costs on Goss. Goss further objects that this interrogatory attempts to bypass the ordered structure for disclosure regarding infringement contentions designed by the Court, agreed upon by the parties, and ordered in this case by attempting to make Goss take a position on non-infringement before plaintiff has identified why it contends Goss has infringed the patent.

INTERROGATORY NO. 5

Describe every basis on which you contend that any one or more claims of the '195 patent are invalid, including but not limited to, every specific prior art reference or material that you contend alone, or in combination with others, render(s) any of the claims of the '195 patent invalid, and identify all persons known to defendants having knowledge thereof and all documents relating thereto.

[RESPONSE]

Goss objects to this interrogatory as follows: it is vaguely worded, and it is unduly burdensome, particularly with respect to 'all persons' and 'all documents' language and the application of that language to this type of contention interrogatory. Goss further objects that this interrogatory was served far in advance of the agreed-upon and ordered date for Rule 26 initial disclosures, and thus is both an attempt to bypass the Court's schedule and an attempt to impose unnecessary litigation costs on Goss. Goss further objects that this interrogatory attempts to bypass the ordered structure for disclosure relating to invalidity contentions designed by the Court, agreed upon by the parties, and ordered in this case by attempting to make Goss take a position on invalidity prematurely.

INTERROGATORY NO. 6

Describe in detail the basis for each of your affirmative
defenses, including all of the specific facts and documents that
evidence or relate to such defenses, and identify all persons
known to defendants having knowledge thereof and all
documents relating thereto.

[RESPONSE]

Goss objects to this interrogatory as follows: it is vaguely
worded, and it is unduly burdensome, particularly with respect
to 'all persons' and 'all documents' language.  Goss further
objects that this interrogatory was served far in advance of the
agreed-upon and ordered date for Rule 26 initial disclosures,
and thus is both an attempt to bypass this Court's schedule and
an attempt to impose unnecessary litigation costs on Goss.

Subject to and without waiving its objections, Goss states as
follows: its infringement and  invalidity contentions will be
detailed pursuant to the Court's schedule, as explained above.
Its prosecution history estoppel defense is that in prosecuting
the '195 patent, the claimed inventors and their attorneys made
statements and amendments to distinguish the claimed
invention over the prior art that limited the scope of the patent.
Goss objects to plaintiff's attempt to obtain detail on a
prosecution history defense before disclosing its own
infringement contentions pursuant to the Court's schedule is an
attempt to violate that schedule and is improper, as explained
above.  Goss will supplement with respect to its defenses once
it has received plaintiff's infringement contentions and once it
has completed its initial investigation.

INTERROGATORY NO. 9

Identify, by name or model number, all devices or machines
made, used, sold or offered for sale by plaintiff that defendants

11

contend infringe any of the claims of the '803 patent and, as to
each machine, device or any component thereof which any of
the defendants contends infringe any claim of the '803 patent,
identify each such claim any of the defendants contends has
been infringed and explain how each such claim is infringed by
setting forth an element-by-element comparison of each claim
with each device or machine, including, without limitation, a
specific identification of what part or parts of each such device
or machine corresponds to every element or limitation of each
claim, identifying all documents relating thereto and all persons
having knowledge thereof.

[RESPONSE]

Goss objects to this interrogatory as follows: it is vaguely
worded, and it is unduly burdensome. Goss further objects that
this interrogatory was served far in advance of the agreed-upon
and ordered date for Rule 26 initial disclosures, and thus is both
an attempt to bypass the Court's schedule and an attempt to
impose unnecessary litigation costs on Goss. Goss further
objects that this interrogatory attempts to bypass the ordered
structure for disclosure regarding infringement contentions
designed by the Court, agreed upon by the parties, and ordered
in this case.

Subject to and without waiving its objections, Goss contends
the SUPRA saddle stitcher infringes the '803 patent. Goss will
supplement once it has completed its investigation.

INTERROGATORY NO. 14

Identify all documents and things known to either of the
defendants (including, but not limited to, their predecessors in
interest) that constitute prior art to the alleged invention of the
'803 patent, or refer or relate to such prior art and, for each such
piece of prior art so identified, state the date on which it first
became known to either of the defendants, the circumstances

12

under which either of the defendants acquired such knowledge and identify all persons known to either of the defendants to have knowledge of such prior art and its relevance to the alleged invention of the '803 patent.

[RESPONSE]

Goss objects to this interrogatory as follows: it calls for an invasion of the attorney-client privilege and protected attorney work product, it is vaguely worded, and it is unduly burdensome, particularly with respect to requests to identify 'all persons' who have knowledge of the prior art and its relevance to the '803 invention or the first date on which it became known. Goss further objects that this interrogatory was served far in advance of the agreed-upon and ordered date for Rule 26 initial disclosures, and thus is both an attempt to bypass the Court's schedule and an attempt to impose unnecessary litigation costs on Goss.

Subject to and without waiving its objections, Goss states that after completing its collection, review, and production of documents, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure it will produce material prior art of the types referred to in 35 U.S.C. § § 102 and 103. Goss further states that the production of any particular publication or document does not constitute a representation that such is prior art.

INTERROGATORY NO. 16

As to any foreign applications relating to the '803 patent, provide the following information:

(a)     Identify all applications for patent in countries foreign to the United States corresponding to, or which claim a priority based on, or which disclosed the subject matter of, Application Serial No. 344,499, filed November 23, 1994, stating as to each such foreign application whether or not it is still pending and

identify all patents or similar property rights which have issued from such applications.

(b)     As to each such foreign application identified in the answer to subparagraph (a) hereof, identify fully all patents, publications, or other references cited against each such foreign application or which were referred to in any correspondence or other documents relating in any way to each such foreign application, identifying all persons having knowledge thereof and all documents relating thereto.

(c)     As to each foreign application identified in subparagraph (a) hereof, state whether any person has filed any opposition, cancellation or like proceeding against any such foreign application, or any patent based in whole or in part thereon, and state whether such application or patent has been involved in any other inter partes proceeding, identifying all persons having knowledge thereof and all documents relating thereto, including, without limitation, all prior art or other references cited or referred to in any such proceeding, and state the final disposition as to each such proceeding.

[RESPONSE]

Goss objects to this interrogatory as follows:  it calls for an invasion of the attorney-client privilege and protected attorney work product, it is vaguely worded, and it is unduly burdensome.  Goss further objects that this interrogatory was served far in advance of the agreed-upon and ordered date for Rule 26 initial disclosures, and thus is both an attempt to bypass the Court's schedule and an attempt to impose unnecessary litigation costs on Goss.  Goss further objects that this interrogatory is not reasonably calculated to lead to the discovery of relevant information.

14

Subject to and without waiving its objections, Goss states that is
not yet completed its investigation and will supplement when it
has done so."

A.   Beyond Any Question Is The Relevancy
Of The Disputed Interrogatories

There can be no debate that the subject matter inquired into in Interrogatory
No. 1 is relevant.  Muller Martini is, of course, aware of the SP 2500 saddle stitcher, but
it is certainly entitled to know if Goss makes and sells other saddle stitchers containing
two stitching stations spaced apart from each other as the '195 patent describes and
claims.

Similarly, Goss pleaded noninfringement and even filed a declaratory
judgment claim seeking a declaration of noninfringement.  Hence, Muller Martini's
Interrogatory No. 4, inquiring into Goss' position on that issue is unquestionably relevant.
The same is true for Interrogatory No. 5, dealing with validity, and Interrogatory No. 6,
dealing with affirmative defenses pleaded by Goss.

Equally beyond dispute is the relevance of Interrogatory No. 9, inquiring
into Goss' claim of infringement based on the '803 patent.  Indeed, Goss has refused to
even identify what claims it contends are infringed.  Muller Martini is also certainly
entitled to the identity of prior art relevant to the '803 patent, of which Goss is aware, as

15

sought in Interrogatory No. 14 and the identity of any foreign patents or patent applications related to the '803 patent, as requested in Interrogatory No. 16.

This Court's local rules, and specifically Local Rule 26.1 and the comments thereto, authorize the commencement of discovery after the meeting of counsel which, at the very latest, occurred February 1, 2008. Goss' contention that the interrogatories are "too early" just has no substance.

B.    Unfounded Is Goss' Objection That The Discovery Sought
      Is Inconsistent With This Court's Scheduling Order

Made of no better stuff is Goss' argument that somehow the timing of Muller Martini's discovery is not consistent with the scheduling order. As already noted, the local rules indicate that this Court should permit discovery to commence after the meeting of counsel, as indeed Muller Martini's discovery here did.

There is nothing in the scheduling order which requires that either party await any of the events in that order, such as the preparation and service of the claim chart, before beginning discovery. Quite the contrary discovery respecting the accused SP 2500 saddle stitcher is necessary to Muller Martini so that it can confirm in detail its position with respect to its charge of infringement. In other words, that discovery will supply details of the specific product so that Muller Martini can properly analyze and

present its infringement contention both for literal infringement and, if necessary, infringement under the doctrine of equivalents. Muller Martini's claim chart is due May 19, 2008, and Goss' documents and noninfringement positions are necessary for Muller Martini to, once again, confirm, in detail, its position.

In that respect, Goss does not deny that it assured this Court at the scheduling conference that the production of the SP 2500 documents could be done expeditiously. Indeed, Goss now takes the position that such documents will be provided "soon" but refuses to indicate what "soon" means.

And of course that same information is necessary for an informed presentation of the Markman issues which begins in September. In Scripps Clinic & Research Foundation v. Genentech, Inc. (Fed. Cir., 1991), 927 F.2d 1565, the Court of Appeals for the Federal Circuit noted that it is particularly efficient to keep the accused product in mind when formulating positions on Markman issues (927 F.2d at 1580):

> "Of course the particular accused product (or process) is kept in mind, for it is efficient to focus on the construction of only the disputed elements or limitations of the claims."

See also Aero Products International, Inc., et al. v. Intex Recreation Corp., et al. (Fed. Cir., 2006), 466 F.3d 1000, 1012, n. 6) and Wilson Sporting Goods Co. v. Hillerich &

17

Bradsby Co. (Fed. Cir., 2006), 442 F.3d 1322, 1326-27, both acknowledging that the knowledge of the accused product "provides meaningful context for the first step of the infringement analysis".

In sum, because the scheduling order imposes dates which are rapidly approaching, Goss has no basis to suggest that somehow it has no obligation to provide discovery until after those dates have passed. This Court should not forget that Goss itself pushed for an "aggressive" schedule; its complaints about being "rushed" in responding to discovery have a particularly hollow ring.

Goss' objections have no substance.

## CONCLUSION

Muller Martini's motion is well-founded and should be granted.


Respectfully submitted,


s/ Keith V. Rockey
KEITH V. ROCKEY
KATHLEEN A. LYONS
  Rockey, Depke & Lyons, LLC
  Sears Tower, Suite 5450
  233 South Wacker Drive
  Chicago, Illinois 60606
  Phone:  (312) 277-2006
  Facsimile:  (312) 441-0570

MICHAEL R. CUNNINGHAM
  Gray, Plant, Mooty, Mooty & Bennett, P.A.
  500 IDS Center
  80 South Eighth Street
  Minneapolis, MN 55402
  Phone:  (612) 632-3000
  Facsimile:  (612) 632-4444

Attorneys for Plaintiff Muller Martini Corp.

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO LOCAL RULES 7.1(c) AND 7.1(e)

Counsel for Plaintiff, Muller Martini Corp., certifies that:

(1)    The memorandum of law filed herein on behalf of Plaintiff, Muller Martini Corp., was prepared on a word processing system using Microsoft Word XP which determines the word count of the memorandum.

(2)    The word count of the Plaintiff's memorandum herein, as reflected in the word processing system used to prepare it, is 4,546 words, not including the words contained in the cover page, the Table of Contents, Table of Authorities and Certificates of Counsel.  The font size used was 14 point.

(3)    I therefore verily believe that the memorandum of law on behalf of Plaintiff, Muller Martini Corp., is in compliance with Local Rules 7.1(c) and 7.1(e).

Respectfully submitted,

Dated:  April 24, 2008                    s/ Keith V. Rockey
                                          One of Plaintiff's Attorneys